**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| Collectanea J. Limited, | ) |
| | ) Case: |
| | ) |
| Plaintiff, | ) Judge: |
| | ) |
| v. | ) Mag. Judge: |
| | ) |
| The Partnerships And | ) |
| Unincorporated Associations | ) |
| Identified On Schedule "A" | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**COMPLAINT**

Plaintiff, Collectanea J. Limited, a Hong Kong Limited Corporation (hereinafter, "Plaintiff" or "Collectanea"), hereby brings the present action against The Partnerships And Unincorporated Associations Identified on Schedule "A" attached hereto, (collectively, "Defendants") and alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to provisions of 28 U.S.C. § 1338(a) – (b) and 28 U.S.C. § 1331 and the Lanham Act, 15 U.S.C. § 1121.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, commercial internet stores operating under the Defendant Names/

Aliases in the Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants reach out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can and, on information and belief, have purchased products bearing infringing versions of Plaintiff's federally registered trademark registration.

3. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products that infringe Plaintiff's federally registered intellectual property. As a result, each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

4. Alternatively, Defendants are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

**INTRODUCTION**

5. This action has been filed by Plaintiff to combat online e-commerce store operators who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale products in connection with Plaintiff's Beadnova trademark.

6. On December 30, 2014, Plaintiff registered its Beadnova trademark, which is covered by U.S. Trademark Registration No. VA 4663497 ("Beadnova Mark" or "the Mark" hereinafter) for use with goods in class 14, including beads for use in the manufacture of jewelry and jewelry making kits. The Beadnova Registration is valid, subsisting, and in full force and

effect. A true and correct copy of the federal trademark registration certificate for the Beadnova Mark is attached hereto as Exhibit One.

7. The stylized and distinctive graphic of Beadnova consistent with the depiction in the registration appears below:

# BEADNOVA

8. The Defendants create numerous Defendant Internet Stores and design them to appear to be selling genuine Plaintiff's products, while selling inferior imitations of Plaintiff's products. These Defendant Internet Stores often include in their offers for sale and sale listings which display the trademark "BEADNOVA". In some images, the Defendants unabashedly include the Beadnova waterprint in the infringing images.

9. The Defendant Internet Stores include in their offers for sale and sale listings counterfeit or colorable imitations of Beadnova branded products. This falsely implies to consumers that there is an association between the Defendants' products and Plaintiff's products.

10. In their offers for sale and displays, the Defendant Internet Stores share unique identifiers, such as design elements and similarities of the infringing products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal operation.

11. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable Beadnova Mark. In addition, Plaintiff has

been irreparably damaged by the loss of exclusivity of its trademark as a result of Defendants' actions. As a result of these injuries, Plaintiff seeks injunctive and monetary relief.

12. Plaintiff is forced to file this action to combat Defendants' trademark infringement and to protect unknowing consumers.

13. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable registered property. In addition, Plaintiff has been irreparably damaged by the loss of exclusivity of its registered property as a result of Defendants' actions. As a result of these injuries, Plaintiff seeks injunctive and monetary relief.

14. This Court has personal jurisdiction over each Defendant, in that each Defendant conducts business in the United States, in Illinois and in this Judicial District, and the acts and events giving rise to this lawsuit were undertaken in Illinois and in this Judicial District. In addition, each defendant has offered to sell and ship and, on information and belief, has sold and shipped, infringing products into this Judicial District.

## THE PLAINTIFF

15. Plaintiff Collectanea J. Limited, is a Hong Kong Limited Corporation having its principal place of business at Flat/Rm 13 02/F, New City Centre, 2 Lei Yue Mun Road, Kwun Tong, Hong Kong.

16. This action has been filed by Plaintiff to combat online e-commerce store operators who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale products in connection with Plaintiff's federally registered property.

17. At all times relevant, Plaintiff has marketed and sold products through the Aliexpress, Amazon and Wish e-commerce platforms, as well as authorized retailers, utilizing

the Beadnova Mark. Sales and revenue derived from merchandise sold with the Beadnova Mark have been significant and generate millions of dollars in sales each year.

18. Plaintiff is the owner of all rights, title and interest in and to the Beadnova Mark, U.S. Trademark Registration No. 4663497. The registration is valid, subsisting, unrevoked and uncancelled. The registration for the Beadnova Mark constitutes prima facie evidence of validity and of Plaintiff's exclusive right to use the Beadnova Mark pursuant to 15 U.S.C. § 1057(b).

19. The Beadnova Mark has not been assigned or licensed to any of the Defendants in this matter.

20. Plaintiff has been using the Mark since November 1, 2013, in connection with the advertising and sale of Plaintiff's Products in interstate and foreign commerce, including commerce in the State of Illinois and the Northern District of Illinois.

21. The Beadnova Mark has been widely promoted, both in the United States and throughout the world.

22. While Plaintiff enjoys exclusivity of select authorized retailers, sales of Plaintiff's Beadnova products represent the majority of Plaintiff's business.

23. Plaintiff controls the content, designs, and images displayed with the Beadnova Mark.

24. Plaintiff's Beadnova Mark is a symbol of Plaintiff's quality, reputation and goodwill and has never been abandoned.

25. Further, Plaintiff has expended substantial time, money and other resources developing, advertising and otherwise promoting the Beadnova Mark.

26. The Beadnova Mark has independent economic value and has generated revenue in relation to the retail items and marketing value depicted therein.

**THE DEFENDANTS**

27. Plaintiff is currently unaware of the identity and/or location of Defendants. However, on information and belief, Defendants are individuals and business entities who reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within Illinois and in this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defendant Internet Stores identified in the Schedule A.

28. Each Defendant targets the United States, including Illinois, and has offered to sell and/or has sold and/or continues to sell infringing products ("Infringing Products") to consumers within the United States, including Illinois and in this Judicial District.

29. Each Defendant, without any authorization or license from Plaintiff, has knowingly and willfully used and continues to use Plaintiff's Beadnova Mark in connection with advertisement, distribution and offering for sale of the products depicted therein without Plaintiff's consent or authorization.

30. Each of the Defendants' online stores offers shipping to the United States, including Illinois, and each Defendant has offered to sell retail items into Illinois and this judicial district utilizing infringing copies of Plaintiff's Beadnova Mark.

31. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores including, and possibly not limited to, those listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

32. This lack of precise information notwithstanding, it is well established that e-commerce sales, including through e-commerce stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized products into the United States. *See* Exhibit Two, Fiscal Year 2018 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report. Over 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers). *Id.* Over 85% of CBP seizures originated from mainland China and Hong Kong. *Id.*

33. Further, third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." *See* Exhibit Three, Daniel C.K. Chow, Alibaba, Amazon, and Counterfeiting in the Age of the Internet, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as Exhibit Four. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, infringers can have many different profiles that can appear unrelated even though they are commonly owned and operated. *See* Exhibit Three at 39. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, infringers can have many different profiles that can appear unrelated even though they are commonly owned and operated. *See* Exhibit Four at 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." *See* Exhibit Three at 186–187.

34. On information and belief, Defendants have engaged in fraudulent conduct when registering the Defendant Internet Stores by providing false, misleading and/or incomplete information to Internet based e-commerce platforms. On information and belief, certain Defendants have anonymously registered and maintained Defendant Internet Stores to prevent discovery of their true identities and the scope of their infringement network.

35. On information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling the Infringing Products. Such seller alias registration patterns are one of many common tactics used by the Defendants to conceal their identities and the full scope and interworking of their infringement operation, and to avoid being shut down.

36. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating as the Defendant Internet Stores often share unique identifiers, such as templates with common design elements. E-commerce stores operating as the Defendant Internet Stores, or other currently unknown aliases, include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, illegitimate search engine optimization (SEO), advertising tactics, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, the offers for sale and advertisements by the Defendant Internet Stores frequently bear similar irregularities and indicia of being related to one another, suggesting that the Defendants are interrelated.

37. On information and belief, Defendants are in communication with each other and regularly participate in QQ.com and WeChat chat rooms regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

38. Infringers such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff. Indeed, analysis of financial transaction logs from previous similar cases indicates that off-shore infringers regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

39. On information and belief, Defendants, without any authorization or license from Plaintiff, knowingly and willfully used and continue to use the Beadnova Mark in connection with the advertisement, distribution, offering for sale, and sale of Infringing Products in the United States and Illinois over the Internet.

40. In sum, Plaintiff's investigation shows that the telltale signs of an illegal infringement ring are present in the instant action. For example, Schedule A shows the use of store names by the Defendant Internet Stores, and the store registrant's location or legal identity is rarely offered.

41. Defendants' unauthorized advertising, marketing, offering for sale products displaying the Beadnova Mark, throughout the United States, including Illinois, is irreparably harming Plaintiff.

### **DEFENDANTS' UNLAWFUL CONDUCT**

42. The success of Plaintiff's Beadnova Mark has resulted in infringement. Plaintiff has identified numerous domain names linked to marketplace listings on certain platforms including the Defendant Internet Stores, which were offering for sale, displaying, advertising

while utilizing the Beadnova Mark without permission. These listings are displayed in the Northern District of Illinois and Defendants offer to ship their products displayed in the infringing images to the Northern District of Illinois.

43. Plaintiff's success in utilizing the Beadnova Mark to market and promote sales of the retail items depicted therein has resulted in widespread infringement. Plaintiff has identified numerous domain names linked to marketplace listings on at least the Walmart platform which was offering, marketing, soliciting, and advertising to consumers in this Judicial District and throughout the United States in a manner that violates Plaintiff's exclusive trademark.

44. Upon information and belief, Defendants facilitate sales by utilizing the Beadnova Mark, including the watermark image, to give the impression that the Defendant is associated with or authorized by Plaintiff. The Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards and PayPal. Defendants further perpetuate the illusion of legitimacy by offering customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers.

45. Plaintiff has not licensed or authorized Defendants to use its Beadnova Mark and none of the Defendants are authorized retailers of genuine Beadnova products or authorized to display the Beadnova Mark.

46. Upon information and belief, Defendants also deceive unknowing consumers by using the Beadnova Mark without authorization within the content, text, and/or meta tags of their websites to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Beadnova products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media

spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine Beadnova products.

47. There are also similarities among the Defendant Internet Stores. For example, some of the Defendant websites have virtually identical layouts, including font and stock images. In addition, the counterfeit and/or infringing products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the infringing Beadnova products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. For example, some Defendants use the same e-commerce platforms as Plaintiff. The Defendant Internet Stores also include other notable common features on the same e-commerce platform, including use of the same domain name registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, illegitimate SEO tactics, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

48. Defendants often go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. For example, to avoid detection, Defendants register Defendant Internet Stores using names and physical addresses that are incomplete, contain randomly typed letters, or fail to include cities or states. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the

Defendants to conceal their identities, the full scope and interworking of their infringing operation, and to avoid being shut down.

49. Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.

50. There are also similarities among the Defendant Internet Stores. For example, some of the Defendant websites have virtually identical layouts. In addition, the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that Defendants are interrelated. For example, some Defendants have the same location in China or the same products for sale.

51. Further, infringers such as Defendants typically operate multiple credit card merchant accounts and vendor accounts such as PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiff's enforcement efforts. Upon information and belief, the foreign Defendants maintain off-shore bank accounts and regularly move funds from their payment accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of payment transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based accounts to China-based bank accounts outside the jurisdiction of this Court.

52. Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the Beadnova Mark in connection with the advertisement,

distribution, offering for sale, and sale of infringing products into the United States and Illinois over the Internet. Each Defendant Internet Store offers shipping to the United States, including Illinois, and has offered to sell infringing Beadnova products into the United States, including Illinois.

53. Defendants' use of the Beadnova Mark in connection with the advertising, distribution, offering for sale, display and sale of infringing products, including the sale of infringing Beadnova products into Illinois is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

54. Defendants in this case and defendants in other similar cases against online infringers use a variety of other common tactics to evade enforcement efforts. For example, infringers like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit.

55. Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the Beadnova Mark in connection with the advertisement, distribution, offering for sale, and sale of counterfeit and infringing products into the United States and Illinois over the Internet. Each Defendant Internet Store offers shipping to the United States, including Illinois, and has offered to sell infringing Beadnova products into the United States, including Illinois.

56. Defendants' use of the Beadnova Mark in connection with the advertising, distribution, offering for sale, display and marketing within Illinois is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING
## (15 U.S.C. §1114)

57. Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

58. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the Beadnova Mark in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods.

59. Defendants have sold, offered to sell, marketed, distributed, and advertised, and/or are still selling, offering to sell, marketing, distributing, and advertising products in connection with the Beadnova Mark without Plaintiff's permission.

60. Defendants have infringed Plaintiff's rights in the Beadnova Mark by, among other things, using in commerce the identical and confusingly similar name "Beadnova" in connection with the promotion, advertising, sale, offering for sale, and distribution of counterfeit Beadnova products.

61. Plaintiff is the exclusive owner of the Beadnova Mark. Plaintiff's United States Registration for the Beadnova Mark (Exhibit One) is in full force and effect. Plaintiff has never licensed or authorized Defendants to market, offer for sale, advertise, or distribute Beadnova branded products.

62. Upon information and belief, Defendants have knowledge of Plaintiff's rights in the Beadnova Mark and are willfully infringing and intentionally using counterfeits of the Beadnova Mark.

63. Defendants' willful, intentional and unauthorized use of the Beadnova Mark is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of

the counterfeit goods among the general public. Through Defendants' infringing activity, Defendants compromise the goodwill of the Beadnova Mark by depriving Plaintiff of the exclusive control over the customer experience and guarantees of the brand.

64. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

65. Plaintiff has no adequate remedy at law, and if Defendants' actions are not preliminarily or permanently enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its Beadnova Mark.

66. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of counterfeit Beadnova products.

67. Plaintiff is entitled to recover its reasonable costs and attorneys' fees incurred in prosecuting this action.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN**
**(15 U.S.C. § 1125(a))**

68. Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

69. Defendants' promotion, marketing, offering for sale, and sale of counterfeit products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' counterfeit and/or infringing Beadnova products by Plaintiff.

70. By using the Beadnova Mark in connection with the sale of counterfeit and/or infringing Beadnova products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the counterfeit products. Specifically, by using the Beadnova brand to promote their counterfeit products, Defendants wrongfully imply to potential customers that customers can expect Defendants to conform with the customer service standards and provide any warranties or guarantees associated with the Beadnova brand.

71. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the counterfeit Beadnova products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

72. Plaintiff is entitled to recover its reasonable costs and attorneys' fees incurred in prosecuting this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

 a. using the Beadnova Mark or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Beadnova product or is not authorized by Plaintiff to be sold in connection with the Beadnova Mark;

 b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Beadnova product or any other product produced by Plaintiff that is not

        Plaintiff's or is not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the Beadnova Mark;

    c.    committing any acts calculated to cause consumers to believe that Defendants' counterfeit Beadnova products or listings for sale utilizing the Beadnova Mark are under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

    d.    further infringing the Beadnova Mark and damaging Plaintiff's goodwill;

    e.    manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear Plaintiff's Mark, including the Beadnova Mark, or any reproductions, counterfeit copies, or colorable imitations thereof, or the Beadnova Mark;

    f.    using, linking to, transferring, selling, exercising control over, or otherwise owning online marketplace accounts that are being used to sell products or inventory not authorized by Plaintiff which bear the Beadnova Mark; and

    g.    operating and/or hosting websites which are involved with the distribution, marketing, advertising, offering for sale, or sale of products or inventory not authorized by Plaintiff which bear the Beadnova Mark.

2)    Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including, without limitation, any online marketplace platforms such as Walmart, Payoneer, Paypal, PingPong, Stripe, LianLian Global, LL Pay U.S., LLC, and Lianlian Yintong Electronic Payment Co. Ltd. ("LianLian"), sponsored search engine

or ad-word providers, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, and Internet search engines such as Google, Bing and Yahoo (collectively, the "Third Party Providers") shall:

    a.    disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods using the Beadnova Mark;

    b.    disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of goods using without authorization the Beadnova Mark;

    c.    take all steps necessary to prevent links from Defendants' Internet Stores from displaying in search results, including, but not limited to, removing links to Defendants' Internet Stores from any search index.

3)    For Judgment in favor of Plaintiff against Defendants that they have:

    a.    willfully infringed Plaintiff's rights in its federally registered trademark pursuant to 15 U.S. Code § 1114;

    b.    otherwise injured Plaintiff's business of Plaintiff by their acts and conduct set forth in this Complaint;

    c.    That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Mark be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117 or in the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the Beadnova Mark; and

      d.      That Plaintiff be awarded its reasonable attorneys' fees and costs as available under 15 U.S.C. § 1117, and other applicable law.

4) Entry of an Order that, upon Plaintiff's request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs, or other alias seller identification or ecommerce store names used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s) and remain restrained until such funds are surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein;

5) Entry of an award of prejudgment interest on the judgment amount; and

6) Award any and all other relief that this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 11th of September, 2025.

/s/ Lydia Pittaway
Bar No. 0044790
Ford Banister LLC
305 Broadway - Floor 7
New York, NY 10007
Telephone: 212-500-3268
Email: lpittaway@fordbanister.com
*Attorney for Plaintiff*